**FOR PUBLICATION**

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and the PEOPLE OF THE VIRGIN ISLANDS, | ) ) ) ) | |
| Plaintiffs, | ) ) | Criminal No. 2008-45 |
| v. | ) ) ) | |
| GLEN LEWIS a/k/a GLENNDON LEWIS, | ) ) | |
| Defendant. | ) ) | |

ATTORNEYS:

**Everard E. Potter, AUSA**
St. Thomas, U.S.V.I.
　　*For the plaintiffs.*

**Jesse A. Gessin, AFPD**
St. Thomas, U.S.V.I.
　　*For the defendant.*

<u>MEMORANDUM OPINION</u>

GÓMEZ, C.J.

　　Before the Court is the motion of the defendant, Glen Lewis a/k/a Glenndon Lewis ("Lewis"), to suppress statements and physical evidence.

I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

　　On the night of July 17, 2008, Virgin Islands Police Department ("VIPD") officers were conducting car safety inspections in Cruz Bay, St. John, U.S. Virgin Islands. VIPD Officers Hippolyte and Fleming stopped a white Suzuki Sidekick

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 2

after observing that it had neither a front license plate nor a spare tire. Officer Hippolyte approached the driver's side of the car and asked the driver for his driver's license, registration and insurance information. Lewis, the driver of the car, responded that he had none of the requested documentation. Officer Hippolyte observed what he believed was a marijuana cigarette on the center console of the car. Officer Hippolyte also smelled marijuana emanating from Lewis. The officers asked Lewis to exit the car, advised him of his *Miranda* rights[1], placed him under arrest and patted him down. During the pat-down, Officer Hippolyte found a green leafy substance in Lewis's left pocket. While Officer Hippolyte was searching Lewis, Officer Fleming examined the car by shining a flashlight through its windows. Officer Fleming saw, in plain view, a red and black bag in the rear compartment of the car. A green leafy substance was protruding from the bag. Officer Fleming retrieved the bag and gave it to Officer Hippolyte. Lewis was thereafter transported to a nearby police station.

At the police station, VIPD Officer Penn gave Lewis an advice of rights form. In the presence of Officer Penn and other officers, Lewis signed the form, indicating that he did not wish

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 3

to waive his right to remain silent. Officer Penn proceeded to ask routine booking questions of Lewis. While Officer Penn and Lewis were alone in a small room, Lewis, unbidden, asked Officer Penn to remove a gun that was in the red and black bag found in the car. Officer Penn picked up the bag and, on placing it back down, heard a thump. Officer Penn called other officers into the room. Officer Hippolyte turned the bag upside down and poured out its contents. A firearm was among those contents. Lewis was asked whether he had a license to possess firearms in the Virgin Islands and whether he knew that he was in close proximity to a school. Lewis responded in the negative to both questions.

    Thereafter Lewis was charged in a two-count indictment. Count One charges Lewis with possession of a firearm that has moved in interstate commerce, within 1,000 feet of a place Lewis knew and had reasonable cause to believe was a school zone, in violation of 18 U.S.C. § 922(q)(2)(A).[2] Count Two charges Lewis with unauthorized possession of a firearm, in violation of V.I.

---

    [2] 18 U.S.C. § 922(q)(2)(A) provides:

> It shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone.

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 4

CODE ANN. tit. 14 § 2253(a).[3]

Lewis seeks to suppress evidence of his arrest and the bag as well as the two statements he made to officers at the police station. The Court held a hearing on Lewis's motion on November 19, 2008. The Court denied the motion with respect to Lewis's arrest and the bag. The Court took the motion under advisement with respect to the two statements. This Memorandum Opinion addresses only those statements.

## II. ANALYSIS

The Fifth Amendment guarantees a suspect in custody the right to remain silent. *See* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."); *see also Miranda v. Arizona*, 384 U.S. 436 (1966). Once a suspect invokes his Fifth Amendment right to remain silent, police questioning must cease. *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). That requirement neither inexorably bars police from reinitiating questioning nor authorizes police to reinitiate questioning of a suspect who invokes his Fifth

---

[3] V.I. CODE ANN. tit. 14 § 2253(a) provides:

Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, . . . loaded or unloaded, may be arrested without a warrant[.]

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 5

Amendment right after a short break. *Id.* at 102. To avoid the "absurd and unintended results" from either of these possible interpretations, the Supreme Court has clarified that once the right is invoked, the admissibility of any statements the suspect subsequently makes is a function of "whether his right to cut off questioning was *scrupulously honored*." *Id.* at 104 (emphasis in original; quotation marks omitted).

In *Michigan v. Mosley*, the defendant was arrested for an alleged robbery and asserted his right to remain silent. He was advised of his *Miranda* rights. Several hours later, officers questioned him about a related murder. During the course of that questioning, the defendant confessed to the murder. The trial court admitted the confession over the defendant's objection that the second interrogation violated his Fifth Amendment right to remain silent. The Supreme Court affirmed the murder conviction:

> This is not a case . . . where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation.

*Mosley*, 423 U.S. at 105-06.

*Mosley* directs courts to consider four factors in deciding

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 6

whether a suspect's right to cease questioning has been scrupulously honored:

> (1) whether a significant amount of time lapsed between the suspect's invocation of the right to remain silent and further questioning; (2) whether the same officer conducts the interrogation where the suspect invokes the right and the subsequent interrogation; (3) whether the suspect is given a fresh set of Miranda warnings before the subsequent interrogation; and (4) whether the subsequent interrogation concerns the same crime as the interrogation previously cut off by the suspect.

*United States v. Lafferty*, 503 F.3d 293, 303 (3d Cir. 2007) (citing *Mosley*, 423 U.S. at 105-06). These factors are not "necessarily dispositive" in a given case. *Id.* "Rather, they are tools [the court] employ[s] to help determine whether a suspect's assertion of *Miranda* rights was scrupulously honored." *Id.* at 303-04 (citations omitted).

*Mosley* does not control in all instances where a suspect has invoked his right to remain silent. *See United States v. Glover*, 104 F.3d 1570, 1581 (10th Cir. 1997). The scrupulously honored standard requires the government to abstain from questioning a suspect unless he (1) initiates further conversation; and (2) waives the previously asserted right to silence. *See Jacobs v. Singletary*, 952 F.2d 1282, 1293 (11th Cir. 1992).

The Supreme Court has declined to articulate a bright-line test governing whether a suspect "reinitiates" contact with law enforcement. *See Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983)

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 7

(expressing "doubt that it would be desirable to build a superstructure of legal refinements around the word 'initiate'"). The Court has nevertheless made clear that "there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to 'initiate' any conversation or dialogue." *Id.* Those situations include "a request for a drink of water or a request to use a telephone." *Id.* Such requests

> are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation[.]

*Id.*

There also are situations in which communications by defendants have been held to constitute an initiation of a conversation. In *Jacobs v. Singletary*, for instance, the Eleventh Circuit found that the suspect "clearly evinced a willingness and desire to discuss the investigation by asking why she was being detained at the police station." 952 F.2d at 1294. Similarly, in *Henderson v. Dugger*, the Eleventh Circuit found that the suspect re-initiated questioning by asking "what was going to happen next?" 925 F.2d 1309, 1312-13 (11th Cir. 1991). In *Davie v. Mitchell*, the Sixth Circuit found that the suspect

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 8

re-initiated contact when he asked a police detective what a police informant had told the detective about his case. No. 03-4293, 2008 U.S. App. LEXIS 23718, at *11-12 (6th Cir. Nov. 12, 2008). In *United States v. Glover*, the Tenth Circuit found no *Mosley* violation because the suspect, after having invoked his right to remain silent, "volunteered that he wished to talk now[.]" 104 F.3d at 1581. In *United States v. Floyd*, the Ninth Circuit found that the question -- "How'd you guys come onto me?" -- showed the suspect's desire to talk about his case. No. 95-50047, 1996 U.S. App. LEXIS 3578 (9th Cir. Feb. 12, 1996). Finally, in *Knox v. Commonwealth*, the Court of Appeals of Virginia found that the suspect's question -- "Can we just talk later?" -- to relate to the pending investigation. 663 S.E.2d 525, 531 (Va. Ct. App. 2008).

Significantly, the United States Court of Appeals for the Third Circuit has held that "an initiation occurs when a suspect initiates a conversation evincing a willingness and a desire for a generalized discussion about the investigation." *United States v. Velasquez*, 885 F.2d 1076, 1085 (3d Cir. 1989) (alteration, quotation marks and citation omitted).[4]

---

[4] In *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), the Supreme Court articulated a two-part test to determine whether a suspect may undergo further interrogation after he has asked for an attorney. The plurality and the dissent disagreed about what constituted an "initiation" by the suspect. The plurality found

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 9

Here, the police officers were investigating Lewis's possession of a bag they knew to contain marijuana. The investigation of that bag was ongoing. Lewis spoke about the contents of that bag with Officer Penn without any solicitation of any kind. *See*, *e.g.*, *Knox*, 663 S.E.2d at 532 (holding that because the appellant's "question . . . related generally to the investigation and was not merely incidental to the custodial relationship, the trial court correctly decided that appellant reinitiated the conversation with police"). Based on these facts, the Court concludes that Lewis's right to cut off questioning was scrupulously honored after Lewis invoked his right to remain silent. The Court further finds that Lewis voluntarily evinced a willingness to talk about the investigation when, without any prompting, he began to discuss the contents of the bag that was found in his car.

Having found that Lewis reinitiated contact with the police, the Court must next determine whether Lewis waived his previously asserted right to remain silent. *Bradshaw*, 462 U.S. at 1046.

---

that questions that "evinced a willingness and a desire for a generalized discussion about the investigation" were sufficient. *Id.* at 1046. The dissent defined "initiation" as "communication or dialogue *about the subject matter of the criminal investigation*." *Id.* at 1053 (Marshall, J., dissenting) (emphasis in original). In *United States v. Velasquez*, the Third Circuit, noting that it was bound by neither the plurality nor the dissent on this issue, accepted the plurality's view. 885 F.2d at 1085.

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 10

"A defendant may waive his *Miranda* rights if the waiver is made knowingly, intelligently, and voluntarily." *United States v. Pruden*, 398 F.3d 241, 246 (3d Cir. 2005) (citing *Miranda*, 384 U.S. at 444). There are two factors to consider in determining the effectiveness of a *Miranda* waiver:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Here, Lewis does not contend, nor does the record reflect, that police officers coerced or pressured him in any fashion. Rather, the record indicates that Lewis fully understood the right that he had earlier asserted. Indeed, the fact that Lewis signed the advice of rights form to indicate that he initially did not wish to waive his right to remain silent, manifests his understanding of that right. Furthermore, the unrebutted evidence in the record reflects that after reinitiating contact, Lewis voluntarily answered the police officers' questions about the firearm.[5] The record further reflects that Lewis is a mature

---

[5] Because it was Lewis who reinitiated contact with the police officers, the fact that the officers did not re-administer

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 11

adult.  Based on the totality of the circumstances, the Court finds that Lewis knowingly and intelligently waived his right to remain silent.  *See*, *e.g.*, *United States v. Bethancourt*, 65 F.3d 1074, 1078 (3d Cir. 1995).

### III. <u>CONCLUSION</u>

For the reasons discussed more fully on the record at the November 19, 2008, hearing, Lewis's motion to suppress will be denied with respect to his arrest and his bag.  For the reasons discussed above, the motion will also be denied with respect to the two statements Lewis made to police officers at the police station.  An appropriate order follows.

S\_____
　　CURTIS V. GÓMEZ
　　　Chief Judge

---

*Miranda* warnings is not necessarily fatal to the government's position. *See*, *e.g.*, *Jacobs*, 952 F.2d at 1295 ("Although it would have been preferable for [law enforcement] to have renewed the *Miranda* warnings prior to asking questions about the shootings, we do not find this factor decisive.").