FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and the PEOPLE OF THE VIRGIN ISLANDS, | ) ) ) | |
| Plaintiffs, | ) ) | Criminal No. 2008-45 |
| v. | ) ) | |
| GLEN LEWIS a/k/a GLENNDON LEWIS, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ATTORNEYS:

**Everard E. Potter, AUSA**
St. Thomas, U.S.V.I.
    *For the plaintiffs.*

**Jesse A. Gessin, AFPD**
St. Thomas, U.S.V.I.
    *For the defendant.*

<u>MEMORANDUM OPINION</u>

**GÓMEZ, C.J.**

Before the Court is the motion of the defendant, Glen Lewis a/k/a Glenndon Lewis ("Lewis"), to dismiss the indictment.

### I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Lewis was charged in September, 2008 in a two-count indictment. Count One charges Lewis with possession of a firearm that has moved in interstate commerce, within 1,000 feet of a place Lewis knew and had reasonable cause to believe was a school zone, in violation of 18 U.S.C. § 922(q)(2)(A) ("Section

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 2

922(q)(2)(A)")[1].  Count Two charges Lewis with unauthorized possession of a firearm, in violation of V.I. CODE ANN. tit. 14 § 2253(a) ("Section 2253(a)")[2].

Lewis seeks dismissal of both counts in the indictment on the basis of the Second Amendment and the Supreme Court's recent decision in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008).  Lewis's argument is limited to his claim that Section 922(q)(2)(A) and Section 2253(a) are unconstitutional because they place "unreasonable restrictions upon possession of a firearm." (Def.'s Mot. to Dismiss 2.)

---

[1]  Section 922(q)(2)(A) provides:

It shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone.

18 U.S.C. § 922(q)(2)(A).

[2]  Section 2253(a) provides:

Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, . . . loaded or unloaded, may be arrested without a warrant[.]

V.I. CODE ANN. tit. 14 § 2253(a).  The Virgin Islands Code, at Title 23, Chapter 5, sets forth rules and regulations governing who may obtain authorization to possess a firearm and how such authorization may be obtained.

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 3

## II. <u>DISCUSSION</u>

The Second Amendment of the Constitution provides:

> A well regulated Militia, being necessary to the
> security of a free State, the right of the people to
> keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

The import of the Second Amendment has long been a subject
of fierce debate.  That debate has been largely between advocates
of the individual rights theory and the collective rights theory.
According to the former, the Second Amendment protects an
individual right to possess a firearm unconnected with service in
a militia.  According to the latter, the Second Amendment
protects only a right of the various state governments to
preserve and arm their militias.  In *District of Columbia v.
Heller*, the United States Supreme Court settled that debate in
favor of the individual rights theory.

The plaintiff in *District of Columbia v. Heller* was a
District of Columbia special police officer who was authorized to
carry a firearm while on duty.  The plaintiff applied to the
District of Columbia for a license to keep his firearm in his
home.  The District of Columbia rejected the plaintiff's
application on the basis of local statutes that provided as
follows:

> It is a crime to carry an unregistered firearm, and the
> registration of handguns is prohibited.  Wholly apart

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 4

> from that prohibition, no person may carry a handgun
> without a license, but the chief of police may issue
> licenses for 1-year periods.  District of Columbia law
> also requires residents to keep their lawfully owned
> firearms, such as registered long guns, unloaded and
> dissembled or bound by a trigger lock or similar device
> unless they are located in a place of business or are
> being used for lawful recreational activities.

*Heller*, 128 S. Ct. at 2817 (internal quotation marks and

citations omitted).  The plaintiff challenged the

constitutionality of these statutes.

The Supreme Court agreed that those statutes violated the

plaintiff's constitutional rights, holding that the District of

Columbia's

> ban on handgun possession in the home violates the
> Second Amendment, as does its prohibition against
> rendering any lawful firearm in the home operable for
> the purpose of immediate self-defense.  Assuming that
> [the plaintiff] is not disqualified from the exercise
> of Second Amendment rights, the District must permit
> him to register his handgun and must issue him a
> license to carry it in the home.

*Heller*, 128 S. Ct. at 2821-22.  The Court concluded that the

Second Amendment confers an "individual right to possess and

carry weapons in case of confrontation," *id.* at 2797, but made

clear that this right "is not unlimited." *Id.* at 2816.

Specifically, the Court observed:

> From Blackstone through the 19th-century cases,
> commentators and courts routinely explained that the
> right was not a right to keep and carry any weapon
> whatsoever in any manner whatsoever and for whatever
> purpose.  For example, the majority of the 19th-century
> courts to consider the question held that prohibitions

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 5

> on carrying concealed weapons were lawful under the
> Second Amendment or state analogues.  Although we do
> not undertake an exhaustive historical analysis today
> of the full scope of the Second Amendment, nothing in
> our opinion should be taken to cast doubt on
> longstanding prohibitions on the possession of firearms
> by felons and the mentally ill, or laws forbidding the
> carrying of firearms in sensitive places such as
> schools and government buildings, or laws imposing
> conditions and qualifications on the commercial sale of
> arms.

*Id.* at 2816-17 (internal citations omitted).  In a footnote, the

Court noted that it "identif[ied] these presumptively lawful

regulatory measures only as examples" and that its "list does not

purport to be exhaustive." *Id.* at 2817 n.26.

In *Heller*, the Court did not direct the lower courts to

apply any one of the "traditionally expressed levels" of scrutiny

in determining whether a regulation runs afoul of the Second

Amendment. *Id.* at 2821.  Such an undertaking was unnecessary in

*Heller* because the law under consideration in that case would

have been unconstitutional "[u]nder any of the standards of

scrutiny that we have applied to enumerated constitutional

rights[.]" *Id.* at 2817.  The Court was not entirely silent on

this point, however.  The Court listed the traditional levels of

scrutiny it has applied in other cases involving constitutional

challenges to statutory regulations: "strict scrutiny,

intermediate scrutiny, rational basis." *Id.* at 2821.  The Court

also noted that the District of Columbia law, at the very least,

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 6

"would pass rational-basis scrutiny." *Id.* at 2817 n.27.[3]

With respect to Count One of the indictment, this Court need not decide today what level of scrutiny should apply to post-*Heller* challenges to Section 922(q)(2)(A). As noted in the passage from *Heller* quoted above, the Supreme Court expressly held up prohibitions on firearms "in sensitive places such as schools" as an example of a lawful regulation. *Id.* at 2816-17. It is beyond peradventure that a school zone, where Lewis is alleged to have possessed a firearm, is precisely the type of location of which *Heller* spoke. Indeed, *Heller* unambiguously forecloses a Second Amendment challenge to that offense under any level of scrutiny. Lewis's motion will therefore be denied with respect to Count One.

The Court must assess Count Two's Section 2253(a) charge against a different backdrop because *Heller* declined to address

---

[3] Despite this comment, the Supreme Court declined to extend rational-basis scrutiny to future Second Amendment challenges. The Court observed that rational-basis scrutiny has been applied only to "constitutional commands that are themselves prohibitions on irrational laws." *Heller*, 128 S. Ct. at 2817 n.27 (citation omitted). In contrast, the Court reasoned "the same test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms." *Id.* (citation omitted). Applying that reasoning, the Court stated that "[i]f all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." *Id.*

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 7

the District of Columbia's licensing requirement. 128 S. Ct. at

2819.  To properly consider the effect, if any, of the Second

Amendment on Section 2253(a), the Court will first address the

reach of the Second Amendment.

In various pre-*Heller* cases, the Supreme Court held that the

Second Amendment constrains only the federal government and

therefore does not apply to the states. *See*, *e.g.*, *Twining v. New*

*Jersey*, 211 U.S. 78, 98 (1908); *Maxwell v. Dow*, 176 U.S. 581, 597

(1900); *Miller v. Texas*, 153 U.S. 535, 538 (1894); *Presser v.*

*Illinois*, 116 U.S. 252, 265 (1886) (reasoning that the Second

Amendment "is a limitation only upon the power of Congress and

the National government, and not upon that of the States");

*United States v. Cruikshank*, 92 U.S. 542, 553 (1876) (stating

that the Second Amendment "is one of the amendments that has no

other effect than to restrict the powers of the national

government").

Although the Supreme Court's holdings on this issue are more

than one century old, they have been cited by several federal

courts of appeal for the proposition that the Second Amendment

has not been incorporated through the Fourteenth Amendment and

therefore does not apply to the states. *See*, *e.g.*, *Bach v.*

*Pataki*, 408 F.3d 75, 84 (2d Cir. 2005) ("[W]e hold that the

Second Amendment's 'right to keep and bear arms' imposes a

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 8

limitation on only federal, not state, legislative efforts.")

(footnote omitted); *Peoples Rights Org., Inc. v. City of*

*Columbus*, 152 F.3d 522, 538 n.18 (6th Cir. 1998); *Love v.*

*Pepersack*, 47 F.3d 120, 123 (4th Cir. 1995); *Fresno Rifle and*

*Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 731 (9th Cir.

1992); *Thomas v. Members of the City Council of Portland*, 730

F.2d 41, 42 (1st Cir. 1984) (per curiam); *Quilici v. Village of*

*Morton Grove*, 695 F.2d 261, 270 (7th Cir. 1982).

State courts have likewise found that state legislative

action is not restricted by the Second Amendment. *See*, *e.g.*,

*State v. Mendoza*, 920 P.2d 357, 360 (Haw. 1996) ("[T]he Second

Amendment does not apply to the States through the fourteenth

amendment to the United States Constitution.") (citation

omitted); *People v. Swint*, 572 N.W.2d 666, 669 (Mich. Ct. App.

1997) ("[T]he Second Amendment is not applicable to the states

through the Fourteenth Amendment."); *State v. Friel*, 508 A.2d

123, 125 (Me. 1986) (citations omitted); *Demyan v. Monroe*, 108

A.D.2d 1004, 1005 (N.Y. App. Div. 1985); *Burton v. Sills*, 240

A.2d 462, 468 (N.J. Super. Ct. Law Div. 1967) ("[T]he Second

Amendment merely protects against unwarranted extensions of

federal power and does not bar a state government from enacting

regulations concerning the use and possession of arms.").

In *Heller*, the Supreme Court noted its previous holdings

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 9

that the Second Amendment has not been incorporated through the
Fourteenth Amendment and thus is inapplicable to the states. 128
S. Ct. at 2813 n.23 (remarking that those decisions "reaffirmed
that the Second Amendment applies only to the Federal
Government").  The Court declined, however, to revisit this issue
because it was "not presented by this case[.]" *Id.; see also
United States v. Fincher*, 538 F.3d 868, 873 n.2 (8th Cir. 2008)
(noting that *Heller* "did not address the question whether the
Second Amendment is incorporated through the Fourteenth Amendment
and thus applicable to the states").

The Virgin Islands, of course, is not a state but an
unincorporated territory. *United States v. Hyde*, 37 F.3d 116, 121
(3d Cir. 1994) (citation omitted); *Government of the Virgin
Islands v. Dowling*, 633 F.2d 660, 667 (3d Cir. 1980).  As such,
the Virgin Islands is subject to Congress's authority under
Article IV, Section 3 of the Constitution to make rules and
regulations to govern the territory. *Hyde*, 37 F.3d at 121
(footnote omitted).  Congress may therefore decide which
provisions of the Constitution apply to the Virgin Islands. *See*
U.S. Const. art. IV, § 3, cl. 2; *see also Government of the
Virgin Islands v. Bodle*, 427 F.2d 532, 533 n.1 (3d Cir. 1970).

In the exercise of its "Power to . . . make all needful
Rules and Regulations respecting the Territory . . . belonging to

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 10

the United States," U.S. Const. art. IV, § 3, cl. 2, Congress

enacted a Bill of Rights for the Virgin Islands at Section 3 of

the Revised Organic Act of 1954 (the "ROA")[4]. *See United States*

*v. Ntreh*, 279 F.3d 255, 257 (3d Cir. 2002); *In re Brown*, 439 F.2d

47, 50-51 (3d Cir. 1971) (en banc).  "With the passage of the

Revised Organic Act, Congress intended to grant 'a greater degree

of autonomy, economic as well as political, to the people of the

Virgin Islands.'" *Government of Virgin Islands v. Bryan*, 818 F.2d

1069, 1072 (3d Cir. 1987) (citing *Virgo Corp. v. Paiewonsky*, 384

F.2d 569, 576 (3d Cir. 1967)); *Water Isle Hotel & Beach Club,*

*Ltd. v. Kon Tiki St. Thomas, Inc.*, 795 F.2d 325, 328 (3d Cir.

1986) (noting that "the history of the relationship between the

United States and the Virgin Islands indicates that *Congress*

*desired the territory to have jurisdictional powers analogous to*

*those of a state*") (emphasis supplied); *cf. In re Estate of*

*Hooper*, 359 F.2d 569, 578 (3d Cir. 1966) ("While not sovereign,

in the true sense of that term, the Revised Organic Act has

conferred upon [the Virgin Islands] attributes of autonomy

similar to those of a sovereign government or a state.").

The Bill of Rights in the ROA provides, in pertinent part:

---

[4]  The ROA operates as the de facto constitution of the
Virgin Islands. *See Parrott v. Government of the Virgin Islands*,
230 F.3d 615, 623 (3d Cir. 2000); *Tamarind Resort Assocs. v.*
*Virgin Islands*, 138 F.3d 107, 113 (3d Cir. 1998)

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 11

> The following provisions of and amendments to the
> Constitution of the United States are hereby extended
> to the Virgin Islands to the extent that they have not
> been previously extended to that territory and *shall
> have the same force and effect there as in the United
> States or in any State of the United States*. . . .: *the
> first to ninth amendments inclusive*[.]

48 U.S.C. § 1561 (emphasis supplied).

By its very terms, the ROA provides for the application of the Second Amendment to the Virgin Islands.  That application, however, is subject to one caveat.  Specifically, the Second Amendment's application to the Virgin Islands is coextensive with the amendment's application to the states. *See*, *e.g.*, *United States v. Hyde*, Crim. No. 1993-65, 1993 U.S. Dist. LEXIS 20047, at *10 (D.V.I. Oct. 21, 1993) (concluding that the ROA's Bill of Rights operates to give the Fourth Amendment "the same force and effect in [the] Virgin Islands as it has in any state of the United States"), *rev'd on other grounds*, 37 F.3d 116 (1994); *see also*, *e.g.*, *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1370 (9th Cir. 1992) (finding that "*Roe v. Wade* applies to Guam as it applies to the states" because Guam's Organic Act provides that "the relevant constitutional amendments 'have the same force and effect' in Guam as in a state of the United States").  As discussed above, the "force and effect" of the Second Amendment on the states is nil because that amendment has not been incorporated through the Fourteenth Amendment.  As a

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 12

consequence, the plain language of the Bill of Rights in the ROA
suggests that the Virgin Islands authorities are similarly
unconstrained by the Second Amendment.

The proposition that the Second Amendment does not apply to
the local authorities finds ample support in the nature of the
relationship between Congress and the Virgin Islands.  The United
States Court of Appeals for the Third Circuit addressed that
relationship in *Harris v. Boreham*, 233 F.2d 110 (3d Cir. 1956).

In *Harris*, the plaintiff fell on a street in Charlotte
Amalie, St. Thomas and thereafter sued the United States under
the Federal Tort Claims Act for damages flowing from the injuries
she sustained from her fall.  The plaintiff argued that any
negligence by the government of the Virgin Islands in maintaining
the street was imputable to the United States on the theory that
all streets in the Virgin Islands -- which is itself, in essence,
a possession of the United States -- are ultimately the property
of the United States.  The Third Circuit rejected that theory.
Noting that the Superintendent of Public Works of the government
of the Virgin Islands was responsible for road maintenance, the
court undertook to determine whether the Superintendent was an
employee of the United States in the discharge of his duties.
The Federal Tort Claims Act defined "employee" to include

> officers or employees of any federal agency, members of
> the military or naval forces of the United States, and

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 13

>    persons acting on behalf of a federal agency in an
>    official capacity, temporarily or permanently in the
>    service of the United States, with or without
>    compensation.

*Harris*, 233 F.2d at 116.  The Third Circuit concluded that the

government of the Virgin Islands was not a "federal agency"

within the meaning of the Federal Tort Claims Act.  The court

reasoned that it is

>    clear that the [government of the Virgin Islands] in
>    the unincorporated territory of the Virgin Islands [is]
>    a body politic quite distinct from the Government of
>    the United States and that it ha[s] attributes of
>    sovereignty which ha[ve] been delegated to it by the
>    Government of the United States but which [are]
>    distinct from the powers of that government.

*Id.* at 114.  The court explained its reasoning:

>    It is settled that Congress has sovereignty over the
>    territories of the United States and accordingly has
>    power to legislate for a territory with respect to all
>    subjects upon which the legislature of a state might
>    legislate within the state.  It is also settled that
>    Congress may delegate to a territory such of these
>    powers as it sees fit.  And the right of Congress to
>    revise, alter and revoke these delegated powers does
>    not diminish the powers while they reside in the
>    territory.  *The aim of Congress is to give the
>    territory full power of local self-determination.  The
>    local laws enacted under the legislative power granted
>    by Congress are accordingly territorial laws, not laws
>    of the United States.*

*Id.* at 113 (emphasis supplied; internal citations and footnote

omitted).[5]

_____

   [5]  This Court has noted that although *Harris* "arose under
the 1936 Organic Act, the [Third Circuit] noted that its ruling
would be no different under the Revised Organic Act of 1954."

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 14

That Section 2253(a) is a local law is incontestable.
Congress, exercising its constitutional authority, drafted into
the ROA a provision for the creation of the Legislature of the
Virgin Islands. *See* 48 U.S.C. § 1571(a) ("The legislative power
and authority of the Virgin Islands shall be vested in a
legislature, consisting of one house, to be designated the
'Legislature of the Virgin Islands', herein referred to as the
legislature."). That provision unambiguously manifests a
congressional intent to vest in the Legislature of the Virgin
Islands the power to promulgate laws for the territory extending
"to all rightful subjects of legislation." *Creque v. Roebuck*,
Civ. No. 655-1978, 1979 V.I. LEXIS 25, at *13 (V.I. Terr. Ct.
Mar. 19, 1979) (citations omitted).

The Legislature of the Virgin Islands, in turn,
independently exercised the authority vested in it by Congress by
way of the ROA in enacting Section 2253(a). Thus, Section
2253(a) is a purely territorial law that cannot be imputed to the

---

*Jackson v. West Indian Co.*, 944 F. Supp. 423, 429 (D.V.I. 1996)
(alteration and citation omitted). This Court has further found
that *Harris* "applies with even more force under the Revised
Organic Act, as amended, which has established an elected
governor and legislature, as well as a territorial judiciary
independent of the District Court of the Virgin Islands." *Id.*
(citation omitted).

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 15

United States.[6] *See*, *e.g.*, *Bryan*, 818 F.2d at 1072 (reasoning that the "suggestion that an Act passed by the Legislature of the Virgin Islands is an Act of Congress is contrary to [Third Circuit] precedent"); *Government of Virgin Islands v. Ortiz*, 427 F.2d 1043, 1047 (3d Cir. 1970) (reasoning that the crime of first-degree murder in the Virgin Islands Code "is not 'in violation of an Act of Congress' because the crime was created by an act of the Virgin Islands legislature"); *Dudley v. Commissioner*, 258 F.2d 182, 188 (3d Cir. 1958) (holding that because officers of the Virgin Islands "are not appointed by nor under the control or authority of the Secretary of the Treasury nor are they his delegates[,] [t]hey are territorial and not federal officers").

  For these reasons, the Court finds that the Second Amendment of the Constitution does not constrain purely territorial action by the Virgin Islands authorities.  Lewis's Second Amendment

---

  [6]  In *Harris*, the Third Circuit remarked, in a passage that bears particular resonance here, that:

  > we cannot subscribe to the statement . . . that local laws continued in force in a territory by virtue of a provision of its organic act are laws of the United States.  *Such a view denies the existence of an independent, though delegated, sovereignty in the territory and treats its legislature as a mere federal agency.*

233 F.2d at 113 n.4 (emphasis supplied).

*United States, et al. v. Lewis*
Criminal No. 2008-45
Memorandum Opinion
Page 16

challenge to Section 2253(a) therefore must fail.  Accordingly,

the motion will also be denied with respect to Count Two of the

indictment.

### III. <u>CONCLUSION</u>

For the reasons discussed above, Lewis's motion to dismiss

the indictment will be denied.  An appropriate order follows.


S\_____
        **CURTIS V. GÓMEZ**
         **Chief Judge**